## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **RUSS SAVAGE**, Individually and For Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**SMOKY ROSE, LLC**,<br><br>Defendant. | Case No. 3:25-cv-914<br><br><br>JURY TRIAL DEMANDED<br><br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## FIRST AMENDED COMPLAINT

### SUMMARY

1. Plaintiff Russ Savage (Savage) brings this lawsuit to recover misappropriated tips, unpaid overtime, and other damages from Smoky Rose, LLC (Smoky Rose) under the Fair Labor Standards Act (FLSA).

2. Smoky Rose employed Savage as a bartender.

3. Smoky Rose misappropriated Savage and other Tipped Workers' (defined below) tips by forcing them to participate in a tip pool with Management.

4. Smoky Rose split Savage and the Tipped Workers' tips with management in violation of 29 U.S.C. § 203(m)(2)(B).

5. Savage and the Overtime Workers (as defined below) regularly worked more than 40 hours in a workweek.

6. But Smoky Rose does not pay its Overtime Workers for all overtime hours they work.

7. Instead, Smoky Rose only paid Savage and the Overtime Workers for hours worked in excess of 40 hours in a week that were approved by Smoky Rose.

8. In fact, Smoky Rose frequently capped the Savage and the Overtime Workers' hours

at 40 hours per workweek, despite them regularly working in excess of 40 hours per workweek.

9. Savage brings this collective action to recover the misappropriated and/or unpaid tips and other damages owed to him and to the other Tipped Workers.

10. Savage brings this collective action to recover the unpaid overtime and other damages owed to him and the other Overtime Workers.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

13. Smoky Rose is headquartered in Dallas, Texas.

## THE PARTIES

14. Savage worked for Smoky Rose from approximately November 2018 until August 2024 as a bartender.

15. Throughout his employment, Savage participated in Smoky Rose's mandatory tip pool.

16. Savage's consent to be a party plaintiff was previously filed with this Court.

17. The first class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All bartenders and servers who worked for Smoky Rose and were subject to its mandatory tip pool at any time in the past three (3) years (the "Tipped Workers").**

18. The second class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All bartenders and servers who worked for Smoky Rose and were subject to its overtime approval policy at any time in the past three (3) years (the "Overtime Workers").**

19. Together, the Tipped Workers and Overtime Workers are referred to as the Putative Class Members.

20. The identities of the Putative Class Members can be readily ascertained from Smoky Rose's records.

21. Smoky Rose, LLC is a Tex-Mex restaurant headquartered in Dallas, Texas and may be served with process by serving its registered agent: David Tripplehorn-Cash, 3500 St. Johns Drive., Dallas, Texas 77095.

## COVERAGE UNDER THE FLSA

22. At all times hereinafter mentioned, Smoky Rose was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all times hereinafter mentioned, Smoky Rose was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Smoky Rose has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25. At all relevant times, Smoky Rose has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

26. In each of the past 3 years, Smoky Rose's annual gross volume of sales has well exceeded $500,000 for at least the past 3 years.

27. At all relevant times, Savage and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS—TIP POOL ALLEGATIONS

28. Smoky Rose owns and operates a Tex-Mex restaurant in Dallas, Texas.

29. Smoky Rose employs bartenders and servers to provide services to its patrons.

30. Savage was employed as a bartender by Smoky Rose from November 2018 until August 2024.

31. Savage was not a management or supervisory employee of Smoky Rose.

32. Savage received tips for his work.

33. The Tipped Workers are current and former bartenders and servers employed by Smoky Rose.

34. The Tipped Workers received tips for their work.

35. The Tipped Workers were not management or supervisory employees of Smoky Rose.

36. Smoky Rose operates a mandatory tip pool at its restaurant in Dallas, Texas.

37. Throughout his employment, Savage was included in the tip pool.

38. Smoky Rose records all cash and credit card tips that its employees earn at the end of the workday.

39. Smoky Rose records all hours worked by its managers, supervisors, and employees at the end of the day.

40. Smoky Rose permitted management personnel to share in the tip pool.

41. Smoky Rose, thus allows managers to keep a portion of its Tipped Workers' tips through the mandatory tip pool.

42. For example, in December 2023, Savage and the Tipped Workers worked one evening where they personally observed a credit card tip paid in excess of $1,000 on a given night.

43. After the conclusion of the evening, Savage and the Tipped Workers compared the tips they received, and confirmed that a portion of the tips were paid out to management.

44. Smoky Rose split Savage and the Tipped Workers' tips with at least one manager in violation of 29 U.S.C. § 203(m)(2)(B).

45. Savage and the Tipped Workers were subject to Smoky Rose's tip pool practices and suffered the loss of tips as a result of those practices.

46. Smoky Rose permitted its managers to keep a portion of its Tipped Workers' tips through the mandatory tip pool.

47. Smoky Rose claims it only permitted its managers to keep a portion of its Tipped Workers' tips when its managers are performing bartender or server duties.

48. But Smoky Rose's managers did not perform bartender or server duties, and still kept a portion of its Tipped Workers' tips.

49. Smoky Rose knew its managers kept a portion of its Tipped Workers' tips through the mandatory tip pool.

50. Smoky Rose should have known its managers kept a portion of its Tipped Workers' tips through the mandatory tip pool.

51. Smoky Rose knew, or showed reckless disregard for, whether the Tipped Workers received all tips under the mandatory tip pool.

52. Smoky Rose willfully violated the FLSA.

### FACTS—OVERTIME APPROVAL POLICY

53. Savage and the Overtime Workers regularly work in excess of 40 hours each week.

54. Smoky Rose required Savage and the Overtime Workers to obtain approval for all overtime hours worked.

55. If Smoky Rose did not approve the overtime hours Savage and the Overtime Workers worked, Smoky Rose would not pay them anything for these "unapproved" overtime hours worked.

56. Instead, Smoky Rose only pays Savage and the Overtime Workers overtime compensation for hours these employees work in excess of 40 in a week that are approved by Smoky Rose.

57. Under Smoky Rose's uniform overtime approval policy, however, Smoky Rose does not pay Savage and the Putative Class Members for this "unapproved" overtime these employees routinely work "off the clock."

58. Thus, Smoky Rose's uniform overtime approval policy violated the FLSA because it deprives Savage and the Overtime Workers of pay for all hours worked, including when these employees work in excess of 40 hours in a workweek.

59. Indeed, including the "unapproved" overtime hours Savage and the Overtime Workers worked "off the clock," these employees regularly work in excess of 40 hours a week.

60. But Smoky Rose does not pay Savage and the Overtime Workers for these "unapproved" overtime hours in violation of the FLSA.

61. In fact, Smoky Rose frequently "capped" the number of hours Savage and the Overtime Workers were paid at 40 hours, regardless of whether Savage and the Overtime Workers worked greater than 40 hours in a workweek.

62. Smoky Rose knew, or should have known, Savage and the Overtime Workers were regularly working "unapproved" overtime hours "off the clock" because Smoky Rose expected and required these employees to do so.

63. But Smoky Rose never paid Savage and the Overtime Workers for the time they worked "off the clock," including when they worked in excess of 40 hours in a single workweek.

64. Likewise, Smoky Rose never paid Savage and the Putative Class Members for the hours they worked in excess of 40 in a week that Smoky Rose did not approve.

65. Thus, under Smoky Rose's common policies and practices, Savage and the Putative Class Members were denied overtime for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

66. Smoky Rose knew, should have known, or showed reckless disregard for the fact Savage and the Putative Class Members worked significant overtime without being compensated for the same.

## CAUSES OF ACTION
## FLSA VIOLATIONS

67. Savage incorporates all previous paragraphs.

68. Savage was subjected to Smoky Rose's mandatory tip pool.

69. Smoky Rose allows managers to keep a portion of Savage and the Tipped Workers' tips in violation of 29 U.S.C. § 203(m)(2)(B).

70. Smoky Rose owes Savage and the tipped workers the tips unlawfully paid to its managers in the past three years.

71. Smoky Rose violated (and continues to violate) the FLSA by failing to pay Savage and the Overtime Workers overtime at 1.5 times their regular rates of pay – as defined by the FLSA – for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

72. Smoky Rose's uniform pay policies and practices described in this Complaint denied Savage and the Overtime Workers overtime compensation at a rate not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 in a single workweek, regardless of whether Smoky Rose approved such overtime hours or whether they were "off the clock," in violation of the FLSA.

73. Smoky Rose knew, or showed reckless disregard for whether, its conduct violated the FLSA.

74. Savage and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COLLECTIVE ACTION ALLEGATIONS**

75. Savage incorporates all previous paragraphs and alleges that the illegal pay practices Smoky Rose imposed on Savage were likewise imposed on the Putative Class Members.

76. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

77. Numerous other individuals who worked with Savage indicated they were paid in the same manner, performed similar work, and were not properly compensated for all tips earned as required by state and federal wage laws.

78. Based on his experiences and tenure with Smoky Rose, Savage is aware that Smoky Rose's illegal practices were imposed on the Putative Class Members.

79. Smoky Roses's unlawful payment of tips to its managers is the result of generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Tipped Workers.

80. Smoky Rose's overtime approval policy is a generally applicable, systematic policy, and practice which is not dependent on the personal circumstances of the Overtime Workers.

81. Savage's experiences are therefore typical of the experiences of the Putative Class Members.

82. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

83. Savage has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Savage has an interest in obtaining the unpaid tips owed to him under federal law.

84. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Smoky Rose will reap the unjust benefits of violating the FLSA and applicable state labor laws.

86. Furthermore, even if some of the Putative Class Members could afford individual litigation against Smoky Rose, it would be unduly burdensome to the judicial system.

87. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

88. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Tipped Workers participated in a mandatory tip pool;

    b. Whether the Overtime Workers were subjected to an overtime approval policy;

    c. Whether Smoky Rose paid its managers tips earned through the mandatory tip pool;

    d. Whether Smoky Rose's payment of tips to its managers or supervisors was made in good faith;

    e. Whether Smoky Rose's violation of the FLSA was willful; and

  f.  Whether Smoky Rose's illegal pay practices were applied uniformly to all Putative Class Members.

89. Savage's claims are typical of the claims of the Putative Class Members. Savage and the Putative Class Members sustained damages arising out of Smoky Rose's illegal and uniform employment policy.

90. Savage knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

91. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

92. Savage demands a trial by jury

## PRAYER

93. WHEREFORE, Savage prays for judgment against Smoky Rose as follows:

  a.  An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b.  For an Order pursuant to Section 16(b) of the FLSA finding Smoky Rose liable for unpaid tips due to Savage and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

  c.  For an Order awarding Savage and the Putative Class Members their reasonable attorneys' fees and expenses as provided by the FLSA;

    d.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    e.    For an Order granting such other and further relief as may be necessary and appropriate.

Date: June 19, 2025.                      Respectfully submitted,

**FITZ LAW PLLC**

By:  */s/ Carl A. Fitz*
      Tex. Bar No. 24105863
      3730 Kirby Drive, Ste. 1200
      Houston, Texas 77098
      Tel.: (713) 766-4000
      carl@fitz.legal

AND

Travis Gasper
Texas Bar No. 24096881
**GASPER LAW PLLC**
633 West David Street
Dallas, Texas 75208
Phone: (469) 663-7336
Fax: (833) 957-2957
Email: travis@travisgasper.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by CM/ECF electronic filing on all known parties on June 19, 2025.

*/s/ Carl A. Fitz*
**Carl A. Fitz**