## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| RUSS SAVAGE, Individually and for Others Similarly Situated, | **Case No. 3:25-cv-914** |
| v. | Jury Trial Demanded |
| SMOKY ROSE, LLC. | 29 U.S.C. § 216(b) Collective Action |

## SAVAGE'S MOTION FOR COURT-AUTHORIZED NOTICE

Respectfully submitted,

By:    */s/ Carl A. Fitz*
    **Carl A. Fitz**
    Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
Tel.: (713) 766-4000
Email: carl@fitz.legal

AND

Travis Gasper
Texas Bar No. 24096881
**GASPER LAW PLLC**
633 West David Street
Dallas, Texas 75208
Phone: (469) 663-7336
Fax: (833) 957-2957
Email: travis@travisgasper.com

**ATTORNEYS FOR SAVAGE AND THE TIPPED WORKERS**

i

## TABLE OF CONTENTS

SAVAGE'S MOTION FOR COURT-AUTHORIZED NOTICE ..................... i

I.    Summary and Nature of the Proceeding ......................................................1

II.   Factual Background ............................................................................................2

III.  Arguments and Authorities ..............................................................................4

    A.  Legal standard for collective actions under the FLSA § 216(b). ........................... 4

    B.  Savage and the Smoky Rose bartenders, barbacks, and runners are similarly situated because their FLSA claims depend on Smoky Rose's policies, not on any individualized inquiries. ................................................................................................... 5

    1.  Savage and the Smoky Rose bartenders, barbacks, and runners were subject to the same unlawful tip pool. .......................................................................................... 7

    2.  Savage and the Smoky Rose bartenders, barbacks, and runners were subject to the same unlawful overtime pre-approval policy. .......................................................... 8

IV.   The Court Should Approve and Adopt Savage's Proposed Notice Plan. ...8

V.    Conclusion ...........................................................................................................9

# TABLE OF AUTHORITIES

## Cases

*Cervantez v. TDT Consulting, LLC,*

    No. 3:18-cv-2547-S-BN, 2019 WL 3948355 (N.D. Tex. July 22, 2019) ................... 9

*Cotton-Thomas v. Volvo Grp. N. Am., LLC,*

    No. 3:20-CV-113-GHD-RP, 2021 WL 2125003 (N.D. Miss. May 25, 2021) .......... 5

*H&R Block, LTD. v. Housden & Beard,*

    186 F.R.D. 399, 400 (E.D. Tex. 1999) .......................................................... 6

*JPMorgan Chase & Co.,*

    916 F.3d 494, 500 (5th Cir. 2019) .............................................................. 1

*Kibodeaux v. A&D Interests, Inc.,*

    579 F. Supp. 3d 896, 911 (S.D. Tex. 2022) ................................................. 9

*Meine v. TCHDallas2, LLC,*

    No. 3:23-cv-00968-K, 2024 WL 3345836 (N.D. Tex. July 9, 2024) ................... 7

*Roberts v. S.B. S. Welding, L.L.C.,*

    140 F. Supp.3d 601 (N.D. Tex. 2015) ......................................................... 4

*Ryan v. Staff Care, Inc.,*

    497 F. Supp. 2d 820 (N.D. Tex. 2007) ........................................................ 4

*Sandoz v. Cingular Wireless, LLC,*

    553 F.3d 913, 916-17 (5th Cir. 2008) ........................................................ 2

*Segovia v. Fuelco Energy LLC,*

    No. SA-17-CV-1246-JK, 2021 WL 2187956 (W.D. Tex. May 28, 2021) .............. 5, 6

*Stringer v. Big Texan Steak Ranch, Inc.,*

    No. 2:23-cv-181-Z-BR, 2025 WL 642050 (N.D. Tex. Feb. 27, 2025) ...................... 7

*Swales v. KLLM Transp. Servs., L.L.C.,*

    985 F.3d 430, 435 (5th Cir. 2021) ........................................................... *passim*

*Vega v. Point Security, LLC,*

    No. A-17-CV-049-LY, 2017 WL 4023289 (W.D. Tex. Sept. 13, 2017).................... 9

*Williams v. D'Argent Franchising, L.L.C.,*

    No. 1:20-CV-01501, 2023 WL 3059192, at *3 (W.D. La. Apr. 24, 2023).................. 6

*Young v. Energy Drilling Co.,*

    534 F. Supp. 3d 720, 725 (S.D. Tex. 2021).................................................... 8

**Statutes**

29 C.F.R. § 531.52(b) ........................................................................... 11

29 C.F.R. § 531.54 ............................................................................... 12

29 U.S.C. § 203(m)(2)(B) ...................................................................... 17

29 U.S.C. § 207(a)(1) ........................................................................... 13

29 U.S.C. § 216(b).................................................................................. 5

## I.    SUMMARY AND NATURE OF THE PROCEEDING

Savage brought this collective action alleging Smoky Rose unlawfully withheld tips and overtime pay in violation of the Fair Labor Standards Act ("FLSA"). Savage requests notice be sent to current and former Smoky Rose bartenders, barbacks, and runners, as they were subject to the same unlawful policies as Savage. Potential class members "cannot benefit from a collective action without 'accurate and timely notice,' as the Supreme Court put it in *Hoffmann-La Roche, Inc. v. Sperling* [493 U.S. 165, 170, (1989)]." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021). "[D]istrict courts... oversee the notice and opt-in process" by authorizing notice to potential plaintiffs of the collective action. *Id.* "Permitting the court to facilitate notice helps ensure both efficient resolution in one proceeding of common issues and that employees will receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (cleaned up).

To that end, Savage requests the Court approve notice of this collective action be sent to:

**All bartenders, barbacks, and runners of Smoky Rose who participated in Smoky Rose's tip pool in the past three (3) years (the "Tipped Workers").**

1

"[T]he district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Swales*, 985 F.3d at 440. So neither the merits of Savage's claims nor Smoky Rose's defenses are at issue. *Id.* at 436. Instead, the Court only considers "whether merits questions can be answered collectively." *Id.* at 442.

Timely notice is imperative. As each day passes, the statute of limitations continues to run on each of the putative collective members' claims. *See, e.g., Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008). The evidence shows Smoky Rose subjected Savage and the Tipped Workers to the same tip pool and overtime pre-approval policy. Whether that common policy violated the FLSA overtime requirements can be determined on a collective basis. The Court should grant this Motion and authorize notice to the putative collective members. *See* **Ex. 5**, Proposed Notice and Consent Forms.

## II.    FACTUAL BACKGROUND

Smoky Rose, LLC (Smoky Rose) is a Tex-Mex restaurant in Dallas, Texas. *See* Doc. 13 ¶ 28. To serve its patrons, Smoky Rose employs bartenders, barbacks, and runners. *See* Doc. 13 ¶ 29; **Ex. 1**, Decl. of Savage, at ¶ 4. Smoky Rose's bartenders, barbacks, and runners are subject to the same tip pool. *See* Ex. 1, at 6; *see also* **Ex. 3**, Smoky Rose's Interrogatory Response at No. 3.

Savage worked for Smoky Rose as a bartender from approximately November 2018 until August 2024. Doc. 13 ¶ 14. During his employment, Smoky Rose maintained

2

detailed records of all tips earned by employees and all hours worked by both management and non-management employees. Doc. 13 ¶ 38. Smoky Rose recorded all cash and credit card tips at the end of each workday and logged hours worked by its employees, including managers and supervisors. *Id.*

Savage was compensated at $8.00 per hour and received a pre-determined daily tip-out generated from tips pooled with other bartenders. **Ex. 3**, Smoky Rose's Interrogatory Response No. 3. Throughout his employment, Savage was consistently subject to the same unlawful employment practices as other Tipped Workers. **Ex. 1**, at ¶¶ 2, 4-6, 12.

Savage and other bartenders, barbacks, and runners were subject to Smoky Rose's overtime approval policy. **Ex. 1**, at ¶¶ 2, 4-6, 12. Smoky Rose implemented a uniform policy that required Overtime Workers to obtain prior approval from management for any overtime hours worked. **Ex. 1**, at ¶ 22. If overtime was not approved by Smoky Rose, employees were explicitly informed that they would not be compensated for those "unapproved" overtime hours. **Ex. 1**, at ¶¶ 21-22.

In practice, Smoky Rose frequently "capped" the number of hours worked by its employees at 40 hours per week, even when they worked beyond that threshold. **Ex. 1**, at ¶¶ 23-25. This practice required employees to clock out early, forcing them to work "off the clock" in order to avoid exceeding the 40-hour limit imposed by Smoky Rose's management. **Ex. 1**, at ¶¶ 23-25. As a result, Savage and other bartenders, barbacks, and runners were regularly denied overtime pay for hours worked in excess of 40 hours per

week. *See* 29 U.S.C. § 207. This practice of capping work hours at 40 and denying overtime pay is a result of Smoky Rose's generally applicable and systematic overtime approval policy, which was applied uniformly to all similarly situated employees, regardless of individual circumstances. **Ex. 1**, at ¶¶ 23-25.

## III. ARGUMENTS AND AUTHORITIES

### A. Legal standard for collective actions under the FLSA § 216(b).

For a court to issue notice to potential class members, a plaintiff must show that he and the potential plaintiffs are similarly situated with respect to their "employment situations." *Id.* at 441. Potential class members are similarly situated to the named plaintiff if they are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (citing *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)). Workers can be similarly situated despite different job responsibilities, unless those distinctions "affect ... the facts that are material to plaintiffs' claim." *Roberts v. S.B. S. Welding, L.L.C.*, 140 F. Supp.3d 601, 607 (N.D. Tex. 2015) (citing *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp.2d 511, 522 (N.D. Tex. 2014)). "[T]he relevant inquiry is whether there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Id.* (citing *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp.2d 703, 720 (S.D. Tex. 2014)). Although *Swales* streamlined the process, it did not alter the meaning of "similarly situated" under §216(b). *See Segovia*

4

*v. Fuelco Energy LLC*, No. SA-17-CV-1246-JK, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) ("Although *Swales* brings step-two of *Lusardi* to the forefront of FLSA collective actions, it does not alter the meaning of 'similarly situated' as honed and considered through judicial decision.").

Similarly situated "does not mean that the class members must be identically situated." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113-GHD-RP, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021). It just means "that the Plaintiff must show 'a demonstrated similarity' among the purported class members, as well as a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries." *Id.* (quoting *Swales*, 985 F.3d at 443). "In general, in order to determine if purported class members are sufficiently similarly situated, courts consider (1) the factual and employment settings of the purported class members; (2) the various defenses available to the defendant and if any defenses are individualized rather than applying to the class as a whole; and (3) fairness and procedural considerations." *Id.* (citing *Swales*, 985 F.3d at 437).

### B.    Savage and the Smoky Rose bartenders, barbacks, and runners are similarly situated because their FLSA claims depend on Smoky Rose's policies, not on any individualized inquiries.

The relevant inquiry to determine whether workers are similarly situated is whether the plaintiffs have sufficiently shown that other current and former employees were together the victims of a single decision, policy, or plan. *See Segovia*, 2021 WL

2187956, at *8 ("[T]he pertinent inquiry is whether the plaintiffs have 'demonstrated similarity among the individual situations.'"). "The key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan." *Williams v. D'Argent Franchising, L.L.C.*, No. 1:20-CV-01501, 2023 WL 3059192, at *3 (W.D. La. Apr. 24, 2023) (quoting *Hamm v. Acadia Healthcare Co.*, No. CV 20-1515, 2022 WL 2713532, at *2 (E.D. La. July 13, 2022)). Proof of such a single practice can be provided through declarations of plaintiffs, identification of potential plantiffs, and/or evidence of a widespread plan. *H&R Block, LTD. v. Housden & Beard*, 186 F.R.D. 399, 400 (E.D. Tex. 1999).

In this case, Savage and the other Tipped Workers were all victims of the same pay policies: (1) Smoky Rose's decision to subject them to a common tip pool, with management's unlawful participation, and (2) Smoky Rose's overtime pre-approval policy, which necessitated unpaid overtime for the Tipped Workers. Smoky Rose uniformly applied this pay policy to all its bartenders, barbacks, and runners, regardless of their job duties. **Ex. 1**, at ¶¶ 15-19. Savage and other Smoky Rose bartenders, barbacks, and runners were also subjected to an unlawful overtime approval policy, where overtime hours worked beyond 40 hours per week were either not paid or were paid incorrectly due to an improper cap on paid hours at 40. **Ex. 1**, at ¶¶ 21-25.

### 1.    Savage and the Smoky Rose bartenders, barbacks, and runners were subject to the same unlawful tip pool.

Where the Plaintiff and putative collective members are subject to the same tip pooling policy, Court-authorized FLSA notice is appropriate. *See Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-cv-181-Z-BR, 2025 WL 642050 (N.D. Tex. Feb. 27, 2025); *Meine v. TCHDallas2, LLC*, No. 3:23-cv-00968-K, 2024 WL 3345836 (N.D. Tex. July 9, 2024). The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.52(b). Regardless of whether the tipped employee's base hourly wage exceeds the federal minimum wage, "[a]n employer may not receive tips from such a tip pool and may not allow managers and supervisors to receive tips from the tip pool." *Id.* § 531.54(c)(3), (d).

Savage personally observed tips being diverted to managers like Alfonso Ramos, despite Ramos not engaging in tip-generating duties. **Ex. 1**, at ¶¶ 18-19. Moreover, former Assistant Manager Charlie Cash, confirms that Smoky Rose management unlawfully participated in the tip pool. **Ex. 2**, Dec. of Cash at ¶¶ 5-7. Smoky Rose's written discovery responses confirm that its bartenders, barbacks, and runners participate in the same tip pool. Ex. 3. Smoky Rose's employment handbook likewise confirms the same. **Ex. 4**, Smoky Rose's Server Handbook at p. 9. FLSA notice should be issued because Savage "is similarly situated to other employees who were subjected

to the same pay practice." *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 725 (S.D. Tex. 2021).

### 2. Savage and the Smoky Rose bartenders, barbacks, and runners were subject to the same unlawful overtime pre-approval policy.

Smoky Rose's practice of requiring employees to obtain prior approval for overtime hours, and its refusal to compensate employees for unapproved overtime worked "off the clock," constitutes a violation of the FLSA's overtime provisions. **Ex. 1**, at ¶¶ 21-25. The Tipped Workers were required to clock out early on multiple occasions, despite regularly working over 40 hours in a week, and was never compensated for the overtime he worked "off the clock." **Ex. 1**, at ¶¶ 26-29. These violations were systemic and applied uniformly to all employees in the affected class. **Ex. 1**, at ¶¶ 15-19, 21-25.

## IV. THE COURT SHOULD APPROVE AND ADOPT SAVAGE'S PROPOSED NOTICE PLAN.

*Swales* dictates that, while a district court may facilitate notice to potential plaintiffs for case management purposes, "it cannot signal approval of the merits or otherwise stir up litigation." *Swales*, 985 F.3d at 434. "These are the only binding commands on district courts." *Id.* As such, Savage submits following proposed Notice Plan, which includes language for the proposed notice that is fair, neutral, accurate, and does not seek to "stir up litigation," but merely seeks to inform these workers of their rights under the FLSA. *See* **Ex. 5**, proposed Notice and Consent form.

Plaintiffs request to send the proposed Notice and Consent form by mail, and the proposed notice via email and text message to putative collective members. *See Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142907, at *34 (N.D. Tex. July 22, 2019) (granting plaintiffs' "request to distribute the Notice through mail, email, text message . . . ."); *Kibodeaux v. A&D Interests, Inc.*, 579 F. Supp. 3d 896, 911 (S.D. Tex. 2022) (permitting, and stating, that "mail, e-mail, and text-message notice will all help facilitate the FLSA's overarching goal of providing potential class members the opportunity to join the case and, therefore, will allow all three forms of notice"). "[E]mail and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus using email and texts to notify potential [collective] members is entirely appropriate." *Vega v. Point Security, LLC*, No. A-17-CV-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017), *rpt. and rec. adopted*, 2017 WL 8774233 (Oct. 12, 2017).

## V.    CONCLUSION

Savage has demonstrated that he is similarly situated to other Smoky Rose bartenders, barbacks, and runners. Savage and other bartenders, barbacks, and runners were equally subject to Smoky Rose's tip pool, and suffered from Smoky Rose's management's tip theft. Savage and the bartenders, barbacks, and runners were likewise subject to Smoky Rose's unlawful overtime pre-approval policy.

This Court should Order Smoky Rose to provide the names, last known addresses, telephone numbers, email addresses, work locations, and dates of employment of all current and former Smoky Rose bartenders, barbacks, and runners.

Dated: December 15, 2025

Respectfully submitted,

By:    */s/ Carl A. Fitz*
    **Carl A. Fitz**
    Tex. State Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
Tel.: (713) 766-4000
carl@fitz.legal

AND

Travis Gasper
Texas Bar No. 24096881
**GASPER LAW PLLC**
633 West David Street
Dallas, Texas 75208
Phone: (469) 663-7336
Fax: (833) 957-2957
Email: travis@travisgasper.com

**ATTORNEYS FOR SAVAGE AND THE TIPPED WORKERS**

## CERTIFICATE OF WORD COUNT

I certify that the word count of this Motion is 2,287 words.

*/s/ Carl A. Fitz*
**Carl A. Fitz**

10

## <u>CERTIFICATE OF CONFERENCE</u>

I conferred with Defendant's counsel regarding the relief presently requested at the 26(f) conference, and again on December 1, 2025. Defendant is opposed.

*/s/ Carl A. Fitz*
**Carl A. Fitz**

## <u>CERTIFICATE OF SERVICE</u>

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on December 15, 2025 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

*/s/ Carl A. Fitz*
**Carl A. Fitz**