# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **RUSS SAVAGE, Individually**<br>**and for Others Similarly**<br>**Situated,** | § <br> § <br> § <br> § | |
| *Plaintiff,* | § <br> § | **CASE NO. 3:25-cv-914** |
| **v.** | § <br> § | |
| **SMOKY ROSE, LLC,** | § <br> § | |
| *Defendant.* | § <br> § | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR COURT-AUTHORIZED NOTICE

Defendant Smoky Rose, LLC ("**Smoky Rose**" or "**Defendant**") files this Response to Plaintiff Russ Savage's ("**Plaintiff**") Motion for Court-Authorized Notice and would show the Court as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................... ii

I.     SUMMARY ..............................................................................1

II.    NATURE AND STAGE OF THE PROCEEDING ......................1

III.   STATEMENT OF ISSUES AND STANDARD OF REVIEW .................2

IV.    FACTUAL BACKGROUND.....................................................3

V.     SUMMARY OF THE ARGUMENT .........................................5

VI.    ARGUMENT AND AUTHORITIES .........................................7

   A.   SMOKY ROSE'S POLICIES DO NOT VIOLATE THE FLSA ............7

      1.   *Alfonso Ramos was Entitled to Participate in the Tip Pool.* .......................8

      2.   *Alfonso Ramos Only Received Tips for Tip-Generating Duties* ...............11

   B.   PLAINTIFF HAS NO EVIDENCE OF SIMILARLY SITUATED
        EMPLOYEES .......................................................................12

      1.   *No Evidence of Similarly Situated Employees Subject to Unlawful Tip
           Pool* ..............................................................12

      2.   *No Evidence of Similarly Situated Employees Subject to Unlawful
           Overtime Policy.* ...........................................................15

   C.   ALTERNATIVELY, BARTENDERS ARE THE ONLY
        SIMILARLY SITUATED EMPLOYEES ..................................17

VII.   CONCLUSION .....................................................................19

VIII.  CERTIFICATE OF WORD COUNT ......................................21

IX.    CERTIFICATE OF SERVICE ...............................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bauer v. Rufe Snow Inv., LLC*, No. 21-cv-2250,
   2023 WL 2842869, at *5-6 (N.D. Tex. Apr. 7, 2023) ................................... 8, 10

*Hoffman v. Bear Chase Brewing Co., LLC*, No. 21-cv-1443,
   2023 WL 2352926, at **3-6 (E.D. Va. Mar. 3, 2023) ......................................8, 9

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987)............................................2

*Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-CV-181-Z-BR,
   2025 WL 642050, at *2 (N.D. Tex. Feb. 27, 2025) ................................... 3, 7, 11

*Swales v. KLLM Transportation Services, LLC,* ............................................. 2, 3, 7

*Sweet v. Batavia Downs Casino*, No. 6:24-cv-06118-MAV,
   2025 WL 2388436, at *5 (W.D. N.Y. Aug. 18, 2025) ........................................9

*Torres v. Chambers Protective Servs.,* No. 5:20-CV-212-H,
   2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021)........................................ 2, 14

**Statutes**

29 C.F.R. § 431.52(b)(2).........................................................................................11

29 C.F.R § 541.100(a)( ................................................................................. 8, 9, 10

29 U.S.C. § 203(b)(2)(B) ....................................................................................1, 8

29 U.S.C. § 207(a). .................................................................................................1

29 U.S.C. § 216(b). .................................................................................................2

# I.    <u>SUMMARY</u>

Plaintiff's Motion for Court-Authorized Noticed must be denied for two reasons: *First*, Plaintiff has failed to produce any evidence that Smoky Rose had an unlawful uniform policy that violated the FLSA. *Second*, Smoky Rose has failed to adduce any evidence to support its contention that there are similarly-situated employees. Because of these failures, Plaintiff's Motion must be denied.

# II.    <u>NATURE AND STAGE OF THE PROCEEDING</u>

Plaintiff filed his First Amended Complaint [Dkt. No. 13] (the "**Complaint**") on April 11, 2025, asserting claims against Smoky Rose for violations of 29 U.S.C. § 203(b)(2)(B) and 29 U.S.C. § 207(a). Plaintiff alleges that Smoky Rose violated 29 U.S.C. § 203(b)(2)(B) by allowing managers to participate in a mandatory tip pool. Plaintiff also alleges that Smoky Rose violated 29 U.S.C. § 207(a) by failing to pay employees for all overtime hours worked.

Smoky Rose filed its Original Answer to Plaintiff's First Amended Complaint and Affirmative Defenses [Dkt. No. 15] on July 10, 2025. Smoky Rose denied each of Plaintiff's allegations.

Plaintiff filed his Motion for Court-Authorized Notice [Dkt. No. 25] (the "**Motion**") on December 15, 2025, seeking to certify a class consisting of Smoky Rose bartenders, barbacks, and runners over the past three years.

## III.    STATEMENT OF ISSUES AND STANDARD OF REVIEW

**ISSUE 1:** Whether Plaintiff established that there are similarly situated employees that should receive court authorized notice of these proceedings.

**ISSUE 2:** Whether Smoky Rose bartenders, barbacks, and runners are "similarly situated" employees subject to court authorized notice of these proceedings.

Under the Fair Labor Standards Act ("**FLSA**") a plaintiff may bring an action on "behalf of himself … and other employees similarly situated." 29 U.S.C. § 216(b). In *Swales v. KLLM Transportation Services, LLC*, the Fifth Circuit rejected the two step *Lusardi* approach for certifying a class of similarly situated individuals. 985 F.3d 430, 440 (5th Cir. 2021) (rejecting *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D. N.J. 1987) two step certification process). Instead, the Fifth Circuit held that "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id*. at 441.

To determine whether putative collective-action members are similarly situated, courts consider: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Torres v. Chambers Protective Servs.,* No. 5:20-CV-212-H, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021) (internal citation omitted). Using

these factors as a guide, "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case." *Swales,* 958 F.3d at 434.

"[T]he plaintiff bears the burden of showing that potential collective-action members are similarly situated, using more than mere conclusory statements and affidavits that are not substantial and detailed." *Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-CV-181-Z-BR, 2025 WL 642050, at *2 (N.D. Tex. Feb. 27, 2025) (citing *Swales*, 985 F.3d at 443). "[I]f named plaintiffs and prospective opt-ins are too diverse to be deemed 'similarly situated'—or if plaintiffs have failed to satisfy their burden of establishing similarity—certification may fail." *Id.* "[E]mployees do not have an inherent right to receive notice; rather district courts have discretion regarding the decision to send notice following certification." *Id.* (citing *Swales*, 985 F.3d at 435-36). "A court's oversight regarding a collective action and corresponding notice process must be agnostic and scrupulously respect judicial neutrality." *Id.* (citing *Swales*, 985 F.3d at 436). "To be sure, 'district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.'" *Id.* (quoting *Swales*, 985 F.3d at 436).

## IV.     FACTUAL BACKGROUND

Smoky Rose hired Plaintiff as a bartender on November 14, 2018. *See* **Exhibit 1** at ¶ 3 (Appx. 002) (Aroche Declaration). During this time, Plaintiff was

subject to Smoky Rose's mandatory tip pool applicable to bartenders. *Id.* (Appx. 002). Under the tip pool policy, employees eligible to receive tips receive a predetermined percentage of the daily alcohol sales. *Id.* at ¶ 4 (Appx. 002). These predetermined tip percentages are included in the Smoky Rose Server Handbook that each employee receives upon their hire. *See* **Exhibit 1-A** at p. 7 (Appx. 015) (SR 000007) (Handbook) It is their duty to review the Smoky Rose Server Handbook and comply with its terms. Ex. 1 at ¶ 4 (Appx. 002). Each employee agrees to the terms in the Smoky Rose Server Handbook upon their hire— including the tip-pool parameters for tip eligible employees. *Id.* (Appx. 002).

Additionally, Smoky Rose also requires all hourly, overtime eligible, employees to request and receive approval from Smoky Rose management before they work any overtime. *Id.* at ¶ 5 (Appx. 002). Smoky Rose has discretion to deny such requests. *Id.* at ¶ 5 (Appx. 002). However, Smoky Rose has, at all times, paid its eligible employees for all time worked, including paying all overtime worked. *Id.* (Appx. 002).

Smoky Rose terminated Plaintiff on July 6, 2024 because he failed to show up to work. *See* **Exhibit 1-B** (Appx. 017) (SR 000082) (Separation Notice). However, Smoky Rose had long been at odds with Plaintiff before he was ultimately terminated. Specifically, former Smoky Rose assistant manager, Charlie Cash, reported multiple instances of Plaintiff's misbehavior on the job. Ex. 1 at ¶ 7

(Appx. 003). For instance, Cash reported to Oscar Aroche, Smoky Rose's director of operations, that Plaintiff had been caught drinking on the job, failed to ring up drinks for particular customers, and stole cash tips and did not report them per the tip-pool policy. *See* Ex. 1 at ¶ 7 (Appx. 003); *see also* **Exhibit 1-C** (Appx. 018) (SR 000064) (Cash Aug. 2, 2022 Email). On another occasion, Cash reported that Plaintiff was unwilling to perform his job duties, consumed alcohol on the job, had several documented cases of managers and peers unwilling to work with him, attempted to purchase cocaine at the restaurant, and was accused of selling drugs at the restaurant. *See* Ex. 1 at ¶ 8 (Appx. 003); *see also* **Exhibit 1-D** (Appx. 019) (SR 000065) (Cash Aug. 11, 2022 Email). Simply put, Plaintiff's termination was a long time coming. Nevertheless, Smoky Rose fully compensated Plaintiff for all sums he was owed under the tip-pool policy and for all overtime he worked. Ex. 1 at ¶ 9 (Appx. 003).

## V.    <u>SUMMARY OF THE ARGUMENT</u>

Plaintiff's case suffers from two fatal flaws—(1) he has no evidence to support his claims that Smoky Rose has an unlawful uniform policy that violates the FLAA and (2) he has no evidence that there are other similarly-situated employees. His claims are entirely fraudulent and are supported by deliberate misrepresentations of fact asserted and "supported" by individuals with a personal vendetta against Smoky Rose. Thus, Plaintiff filed this lawsuit to harass Smoky

Rose and in retaliation for his well-deserved termination.

Plaintiff offers two self-serving declarations as evidence to support his argument that Smoky Rose bartenders, barbacks, and runners of the past three years are similarly-situated employees that should receive court authorized notice of these proceedings. However, Plaintiff does not meet his burden in showing that these employees are similarly situated or that Smoky Rose had an unlawful uniform policy. Instead, Plaintiff offers only conclusory statements that amount to "it happened because I say it happened." But that is not evidence. Thus, Plaintiff fails to meet his burden because he cannot provide factual support for his claims.

Moreover, Plaintiff does not even attempt to assert that these employees perform similar job duties and are paid under a similar payment structure. Plaintiff's only argument is that these employees are subject to the same policies that he alleges are unlawful. However, the policies at issue are not unlawful. Further, Plaintiff cannot identify when any of these events happened or who else witnessed these events. Thus, Plaintiff has failed to establish that there are any similarly-situated employees.

Furthermore, bartenders, barbacks, and runners are not similarly situated. The job descriptions and pay structures for these three positions are substantially different. Moreover, there is no evidence that any other employee suffered the same alleged harms for which Plaintiff complains. As such, the Court should deny

Plaintiff's Motion.

Nevertheless, and in the alternative, in the event the Court finds that Plaintiff has met his burden, which he has not, the only employee category remotely similarly situated are bartenders. Therefore, if the Court finds that Plaintiff has met his burden, notice should be limited to Smoky Rose bartenders for the past three years.

## VI.    ARGUMENT AND AUTHORITIES

### A.    SMOKY ROSE'S POLICIES DO NOT VIOLATE THE FLSA

Plaintiff bears the burden of showing similarly-situated individuals exist "using more than mere conclusory statements and affidavits that are not substantial and detailed." *Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-CV-181-Z-BR, 2025 WL 642050, at *2 (N.D. Tex. Feb. 27, 2025) (citing *Swales*, 985 F.3d at 443). But Plaintiff cannot meet this burden because no evidence exists. Plaintiff's claims are fraudulent and made in bad faith. Plaintiff's only "evidence" are two self-serving declarations from Savage and a third-party, Charlie Cash, who is a similarly disgruntled former Smoky Rose employee *and* the estranged brother of Smoky Rose's owner, David Cash. The declarations are meritless and do substantiate that *any* similarly situated employees exist.

Furthermore, Plaintiff and Cash deliberately misrepresent Smoky Rose's tip-pool policy and the status of another former Smoky Rose employee, Alfonso

Ramos. Plaintiff and Cash allege that Smoky Rose's tip pooling practices violate the FLSA because "managers like Alfonso Ramos" received tips "despite Ramos not engaging in tip-generating duties." Motion at p. 7; *see also* Motion Ex. 1 at ¶¶ 18-19, 20, Ex. 2 at ¶¶ 5-7. However, Plaintiff and Cash's allegations fail for two reasons: (1) Mr. Ramos was entitled to participate in the tip-pool and (2) Mr. Ramos's primary duties were front-line, tip-generating bartending duties.

### 1. Alfonso Ramos was Entitled to Participate in the Tip Pool.

29 U.S.C. § 203(m)(2)(B) states that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portions of employees' tips, regardless of whether or not the employer takes a tip credit." However, this provision of the FLSA does not define "manager" nor does Plaintiff provide a definition of a "manager" in his Motion.

Therefore, Smoky Rose asserts that this Court should employ the definition of the term "manager" as set forth in 29 C.F.R § 541.100(a)(2)-(4). Many courts, including this Court, regularly apply 29 C.F.R § 541.100(a)(2)-(4) to evaluate claims related to "managers" participating in an employee tip pool. *See Bauer v. Rufe Snow Inv., LLC*, No. 21-cv-2250, 2023 WL 2842869, at *5-6 (N.D. Tex. Apr. 7, 2023) (applying 29 C.F.R.§ 541.100(a)(2)-(4) to interpret "managers or supervisors" under 29 U.S.C. § 203(m)(2)(B)); *see also Hoffman v. Bear Chase*

*Brewing Co., LLC*, No. 21-cv-1443, 2023 WL 2352926, at **3-6 (E.D. Va. Mar. 3, 2023) (same); *Sweet v. Batavia Downs Casino*, No. 6:24-cv-06118-MAV, 2025 WL 2388436, at *5 (W.D. N.Y. Aug. 18, 2025) (same). Under 29 C.F.R. § 541.100(a)(2)-(4) a "manager" is any employee:

> (2)    Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3)    Who customarily and regularly directs the work of two or more other employees; *and*
>
> (4)    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." the FLSA managers are typically considered an "employee employed in a bona fide executive capacity.

Mr. Ramos's primary job duties were those of a bartender. *See* Exhibit 1 at ¶ 10 (Appx. 003-004). He was employed as an hourly employee and regularly performed the same tasks as any other Smoky Rose bartender. *Id.* (Appx. 003-004). While his job title was "bar manager"[1] his function did not meet the factors detailed above. His primary duty did not involve management of Smoky Rose or a customarily recognized department or subdivision of Smoky Rose. *Id.* at ¶ 11 (Appx. 004). Rather, he worked as a bartender but had additional duties such as creating the bartender schedule, overseeing bar staff during Smoky Rose's

---

[1] Importantly, at one point in time Plaintiff worked as a bar manager and is well-aware of the lawful participation in

operating hours. *Id.* at ¶ 11 (Appx. 004). But Mr. Ramos could not unilaterally hire and/or fire other bartenders. *Id.* at ¶ 11 (Appx. 004). Rather, he could only make recommendations based upon his daily observations regarding staffing to Smoky Rose's management about such decisions. *Id.* (Appx. 004). Further, Mr. Ramos attended bartender interviews and offered input to Smoky Rose management, but he never interviewed candidates on his own nor did he have authority to unilaterally hire any such candidates. *Id.* (Appx. 004). Mr. Ramos did, on only a few occasions, participate in the termination of an employee, but this was only during a time when Mr. Ramos was in training to be a part of management (which he was not), and never during his times when he was working in the bar. *Id.* (Appx. 004). Mr. Ramos does not meet this definition of "manager" because does not satisfy factor (2). And as enumerated above all of these factors must be met for an employee to be considered a manager. *See* 29 C.F.R. 541.100 (each factor must be met as indicated by the "and" preceding factor (4).

However, even if the Court finds that Mr. Ramos is a manager under the FLSA, he was still entitled to receive tips. *See Bauer*, 2023 WL2842869, at *5 ("While managers or supervisors are barred from retaining tips received by other employees, '[a] manager or supervisor may keep tips that he or she receives directly from customers based on the service that he or she directly and solely

---

the tip-pool for a bar manager's tip generating work. Ex. 1 at ¶ 12 (Appx. 004).

provides.'") (quoting 29 C.F.R. § 431.52(b)(2)).

## 2. *Alfonso Ramos Only Received Tips for Tip-Generating Duties*

Bartenders at Smoky Rose customarily and regularly receive tips. *See* Ex. 1-A at p. 7 (SR 000007) (Appx. 015); *see also Stringer*, 2025 WL 642050, at *2 (identifying bartenders as employees who typically receive tips).

The majority of Mr. Ramos's job was to perform bartending duties. Ex. 1 at ¶ 10 (Appx. 003-004). Mr. Ramos only received tips for work he performed as a bartender. *Id*. at ¶ 13 (Appx. 004). This includes, but is not limited to taking orders, making drinks, and serving customers. *Id.* (Appx. 004). Mr. Ramos never received tips for any work performed in a managerial capacity (i.e., supervising workers, creating a schedule, hiring/firing employees). *Id*. at ¶ 14 (Appx. 005). He only received work for the above-described tip-generating work that he personally performed. *Id.* (Appx. 005). Plaintiff has provided no evidence that Mr. Ramos received tips illegally. Plaintiff provided an allegation from Cash wherein he stated that he personally paid Mr. Ramos. *See* Motion Exhibit 2 at ¶ 7 (Appx. 005). However, Plaintiff provides no details to verify this claim. Plaintiff does not provide any dates that this occurred, any amounts that Mr. Ramos allegedly received, or any description of the duties Mr. Ramos did or did not perform. If Cash paid Mr. Ramos tips for non-tip-generating work, then Cash was acting on his own and not as an agent of Smoky Rose because such behavior is against

Smoky Rose's policies. Ex. 1 ¶ 15 (Appx. 005).

## B.    PLAINTIFF HAS NO EVIDENCE OF SIMILARLY SITUATED EMPLOYEES

### 1. *No Evidence of Similarly Situated Employees Subject to Unlawful Tip Pool*

Plaintiff's only allegation regarding similarly situated employees for his tip pooling claim is that bartenders, barbacks, and runners were subject to the same unlawful tip pool. *See* Motion at p. 7. And, as described above, Smoky Rose's tip-pool policy is not a uniform unlawful policy.

Further, Plaintiff fails to provide *any* evidence that these three categories of employees perform the same or similar tasks, nor does he provide *any* evidence regarding the pay practices for these categories of employees[2]. Rather, Savage stated, in conclusory fashion, that, *inter alia*, (1) Smoky Rose employed other bartenders, barbacks, and runners under the same employment practices and policies, (2) these employees were subject to the same Smoky Rose practices and policies; (3) these employees were required to participate in the tip pool; and (4) "[b]ased on my employment and conversations with my coworkers, I know that Smoky Rose does not fully distribute the pooled tips solely among customarily and

---

[2] Savage cites to conclusory declarations that do not support his claims of similarly situated employees. He also provides a single citation to Smoky Rose's written discovery responses but does not identify which response in particular he alleges supports his claim. Rather, Savage attached all nine of Smoky Rose's responses to Savage's interrogatories. Savage also cites to the tip policy in the Smoky Rose Server Handbook. However, as detailed herein (*see supra* § V(A)) these tipping policies are lawful. Plaintiff provides no argument or support as to his allegations that the policy is unlawful.

regularly tipped employees."[3] Motion, Ex. 1 at ¶¶ 4-7 (Appx. 1). Savage then stated that "Smoky Rose unlawfully kept and diverted tips from me and other tipped employees by allowing management to share in the mandatory tip pool." *Id*. at ¶ 15 (Appx. 2).

Savage also details one unspecified evening in December 2023 where he and other employees allegedly compared tips and "concluded that a portion of the tips were paid out to Smoky Rose's management." *Id*. at ¶¶ 18-19 (Appx. 2). However, like all of Plaintiff's claims, he has no evidence to support this assertion. Savage also relies on testimony from Charlie Cash to support his claims that there are similarly-situated employees. However, Mr. Cash's declaration is replete with inaccuracies at best, and deliberate misrepresentations at worst. For example, Cash states that Mr. Ramos "stole tips paid to Savage and other tipped Smoky Rose employees." Motion, Exhibit 2, at ¶ 5 (Appx. 5). That is categorically false. *See* Ex. 1 at ¶ 15 (Appx. 005). Mr. Ramos worked as an hourly bar manager and received tips for his tip-generating work. *See id*. at ¶¶ 10-14 (Appx. 003-005). Cash then stated that he knows that Mr. Ramos "stole tips because I [Cash] was a part of

---

[3] Importantly, Plaintiff denied having any communications between himself and other employees regarding the tip pooling allegations in his responses to Smoky Rose's discovery requests. *See* Exhibit 2 at Response to RFP No. 9 (Appx. 021), Response to RFP No. 11 (Appx. 021-022), Response to RFP No. 16 (Appx. 023), Further, Plaintiff was unable to identify *any* employees present during shifts that he alleges managers improperly took part in the tip pool (while also being unable to provide specific dates that these actions allegedly happened) in response to Smoky Rose's interrogatories. *See id.* at Response to ROG No. 2 (Appx. 024). Smoky Rose reserves the right to file a Motion to Compel Plaintiff's discovery responses and to seek sanctions under Rule 37, Rule 11, and any other applicable rule for discovery abuse.

management, and I paid Alfonzo [*sic*] out in cash." *Id.* at ¶ 7 (Appx. 005). This testimony from Cash alone shows that Mr. Ramos was not a manager as defined by the FLSA, as it is clear the Ramos reported to Cash, who was "part of management."

Moreover, it makes no sense that Mr. Ramos stole tips, on the one hand, and that Cash paid him the same tips, on the other. Simply put, Cash's statements are not true. Mr. Ramos only received tips for his tip-generating work. *See id.* Furthermore, Cash provides conclusory statements that he is "aware that other Smoky Rose tipped workers also suffered from Smoky Rose's policy of stealing tips from its tipped employees." Motion, Ex. 2, Dkt. No. 25-1, at ¶ 11.

Savage and Cash make broad-sweeping allegations of unlawful activity. However, as detailed herein, none of the allegations are actually unlawful. Additionally, Plaintiff fails to establish that there are any similarly-situated employees. Savage and Plaintiff simply assert that others also suffered because of the actions they describe. But Plaintiff makes no effort to establish that there are similarly-situated employees under the law. *See Torres v. Chambers Protective Servs.,* No. 5:20-CV-212-H, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021) (holding that similarly situated employees are determined by "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses

available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations.").

As such, Plaintiff has failed to fulfill the bare minimum requirements. He has made no efforts to establish that bartenders, barbacks, and runners are similarly situated regarding the tip-pool allegation. And, as detailed below (*see infra* § V(C)) these employee categories are not similarly situated. .

### 2. *No Evidence of Similarly Situated Employees Subject to Unlawful Overtime Policy.*

Plaintiff's "evidence" regarding his overtime claim suffers the same flaw as detailed above. Namely, there is no evidence of similarly situated employees. Plaintiff's entire argument for this claim rests on his conclusory declaration. *See* Motion at p. 8 (citing Ex. 1 at ¶¶ 21-25, 26-29 (Appx. 003)). Here, Savage states that Smoky Rose implemented an overtime preapproval policy wherein Smoky Rose would not pay employees for overtime worked without its approval. *Id*. at ¶ 22 (Appx. 003). Savage also stated that Smoky Rose management, including Oscar Aroche, would require him to clock-out approximately two or three hours early on workweeks when I was scheduled to work greater than 40 hours in a week." *Id*. at ¶ 24 (Appx. 003). Savage then identifies two weeks that he alleges he worked more than 40 hours a week, but was only paid for 40 hours of work.[4] *Id*. at ¶ 26-30

---

[4] Plaintiff refused to provide specific instances of these allegations in response to Smoky Rose's interrogatories; instead claiming that he did not recall specific dates, hours, or names of the instances this occurred or who else was working. *See* Ex. 2 at Response to ROG No. 3 (Appx. 025). Plaintiff then

(Appx. 003).

Yet again, Savage's claims are categorically false. Smoky Rose does have a preapproval policy that requires employees to request and receive approval for overtime. Ex. 1 at ¶ 5 (Appx. 002-003). Smoky Rose has the right to decline such requests. *Id*. (Appx. 002). However, if an employee does work overtime, pre-approved or not, Smoky Rose fully compensates the employee pursuant to the law. *Id*. (Appx. 002). Savage never complained to Smoky Rose that he was not being fully paid for all overtime hours worked. *Id*. at ¶ 16 (Appx. 005). Smoky Rose has provided pay code reports detailing each instance that Savage worked overtime from 2019 through 2024. However, Savage has failed and refused to identify any instance other than two alleged dates in June that he claims to have worked overtime without compensation. Moreover, the only other statement Savage provides to prove similarly situated employees is as follows: "Like me, other Smoky Rose bartenders, barbacks, and runners were routinely required to perform work off-the-clock as a result." Motion Ex. 1 at ¶ 33 (Appx. 004). But he provides no evidence whatsoever to support this conclusory statement. There is no evidence that there are any similarly situated employees.

---

incorporated his Declaration attached to the Motion as responsive to the interrogatory request. However, Plaintiff clearly knows of other instances that he alleges support his claim as he states "[t]here are many examples where …. Smoky Rose's [pre-approval policy] consistently shorted [his] overtime hours." *Id*. at ¶ 30 (Appx. 003). However, Plaintiff continues to refuse to identify each instance of alleged FLSA violations that form the basis of his claims. Smoky Rose reserves the right to file a Motion to Compel Plaintiff's discovery responses and to seek sanctions under Rule 37, Rule 11, and any other applicable

## C.    ALTERNATIVELY, BARTENDERS ARE THE ONLY SIMILARLY SITUATED EMPLOYEES

Alternatively, if the Court finds that Plaintiff has met his burden, then the only employees that are similarly situated are the Smoky Rose bartenders. As detailed throughout this Response, Savage relies on conclusory declarations to establish similarly situated employees. However, he provides no details regarding the job duties or pay structure for bartenders, barbacks, and runners. Barbacks and runners have different responsibilities and pay structure; and thus, are not similarly situated for collective actions.

Bartenders and barbacks do have *some* similar responsibilities. For example, bartenders and barbacks perform the tasks of "Everyday Bar Opening Duties, Final Readiness Check / Open Walkthrough, Shift Change Duties, and Everyday bar Closing Duties" detailed in Smoky Rose's Response to Plaintiff's Interrogatory No. 5. *See* Exhibit 3 (Appx. 028-030). However, they also provide distinctly different services to Smoky Rose. Specifically, bartenders, and only bartenders provide the following services: (1) mixing and serving drinks; (2) handling cash and POS transactions; (3) checking IDs to ensure legal drinking age compliance; (4) monitoring alcohol consumption and ensuring responsible serving of alcohol; and (5) providing customer service and upselling drinks. *See* Exhibit 1 at ¶ 18 (Appx. 005). On the other hand, barbacks provide the following services: (1)

rule for discovery abuse.

assisting bartenders by restocking supplies; (3) helping set up and break down the bar before and after shifts; and (4) maintaining kegs. *See id.* at ¶ 19 (Appx. 005-006). Thus, bartenders and barbacks provide different services to Smoky Rose and do not have the same job duties.

Runners have nothing in common with bartenders or barbacks. Runners' duties include: (1) delivering food from the kitchen to tables; (2) ensuring correct orders and any special requests are delivered; (3) communicating with servers and kitchen staff about timing and availability; (4) and maintaining cleanliness of food stations. *See id.* at ¶ 20 (Appx. 006). There is nothing similar about runners' duties as it relates to bartenders and barbacks. Runners are especially not "similarly-situated" because Plaintiff complains about purported management participating in the alcohol sales tip pool, whereas runners participate in the food sales tip pool, and thus, are clearly not similarly situated.

Each of these positions also have their own unique payment structure. *Id.* at ¶ 21 (Appx. 006). Bartenders are paid $8.00-$10.00 an hour based on experience. *Id.* at ¶ 22 (Appx. 006). Their tips (cash and credit card) are pooled by hours worked per day and paid out weekly via check and direct deposit. *Id.* at ¶ 22 (Appx. 006). Bartenders are paid a 3.5% daily tip out from the server's liquor, beer, and wine sales. *Id.* (Appx. 006)*; see also* Ex. 1-A at (Appx. 015) (SR

000007). Barbacks are paid $11.00-$12.00 an hour based on experience. *Id.* at ¶ 23 (Appx. 006). They are paid 15% of the bartenders' total tips. *Id.* (Appx. 006); *see also* Ex. 1-A at Appx. 015 (SR 000007). Runners are paid $10.00-$18.00 an hour based on experience. *Id.* at ¶ 24 (Appx. 006). They are paid a 2.5% daily tip out from the server's food sales. *Id.* at ¶ 24 (Appx. 006); *see also* Ex. 1-A at Appx. 015 (SR 000007).

There are little to no similarities in the job duties for Smoky Rose bartenders, barbacks, and runners. There are no similarities in pay structure across these employee categories. Therefore, there are no other similarly situated employees outside the bartenders.

Should the Court find that Plaintiff has met his burden, which Smoky Rose disputes, and authorizes notice to similarly situated employees, then Smoky Rose has no objection to the form notice attached to Plaintiff's Motion except for the fact that notice should be limited to Smoky Rose bartenders.

## VII.    <u>CONCLUSION</u>

For the reasons stated herein, Smoky Rose requests that the Court deny Plaintiff's Motion and grant Smoky Rose any other and further relief to which it may be justly entitled.

Dated: January 5, 2026                    Respectfully submitted,

**PLATT RICHMOND PLLC**

*/s/ Kinsey D. Lakey*
**KINSEY D. LAKEY**
Texas Bar No. 24122134
klakey@plattrichmond.com
**WILLIAM S. RICHMOND**
Texas Bar No. 24006680040
brichmond@plattrichmond.com
**HEATHER M. CRABILL**
Texas Bar No. 24131151
hcrabill@plattrichmond.com
**CHRISTOPHER L. HARBIN**
Texas Bar No. 24083134
charbin@plattrichmond.com

1201 N. Riverfront Blvd., Suite 100
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR DEFENDANT**

## VIII.      <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Judge Brown's Rule II(A), the undersigned hereby certifies the word count of the response as follows: 4,248.

*/s/ Kinsey D. Lakey*
**KINSEY D. LAKEY**

## IX.      <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Smoky Rose does hereby certify that the foregoing document was served on all counsel of record on December 31, 2025, by this Court's electronic filing notification system.

*/s/ Kinsey D. Lakey*
**KINSEY D. LAKEY**