# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RUSS SAVAGE, Individually and for Others Similarly Situated,** | § § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CASE NO. 3:25-cv-914** |
| **SMOKY ROSE, LLC,** | § § § | |
| *Defendant.* | § § | |

### APPENDIX TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR COURT-AUTHORIZED NOTICE

| EXHIBIT | DOCUMENT DESCRIPTION | APPX. NO. |
|---|---|---|
| 1. | Declaration of Oscar Aroche | App. 001-008 |
| 1-A. | Handbook (SR 000001-8) (CONFIDENTIAL) | App. 009-016 |
| 1-B. | Separation Notice (SR 000082) (CONFIDENTIAL) | App. 017 |
| 1-C. | Cash 8/2 Email (SR 000064)(CONFIDENTIAL) | App. 018 |
| 1-D. | Cash 8/11 Email (SR 000065) (CONFIDENTIAL) | App. 019 |
| 2. | Plaintiff's First Amended Discovery Responses | App.020-025 |
| 3. | Smoky Rose's Discovery Responses | App.026-030 |

[SIGNATURES ON FOLLOWING PAGE]

Dated: January 5, 2026                       Respectfully submitted,

                                             **PLATT RICHMOND PLLC**

                                             */s/ Kinsey D. Lakey*
                                             **KINSEY D. LAKEY**
                                             Texas Bar No. 24122134
                                             klakey@plattrichmond.com
                                             **WILLIAM S. RICHMOND**
                                             Texas Bar No. 24006680040
                                             brichmond@plattrichmond.com
                                             **HEATHER M. CRABILL**
                                             Texas Bar No. 24131151
                                             hcrabill@plattrichmond.com
                                             **CHRISTOPHER L. HARBIN**
                                             Texas Bar No. 24083134
                                             charbin@plattrichmond.com

                                             1201 N. Riverfront Blvd., Suite 100
                                             Dallas, Texas 75207
                                             214.559.2700 Main
                                             214.559.4390 Fax

                                             **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned counsel for Smoky Rose does hereby certify that the foregoing document was served on all counsel of record on January 5, 2026, by this Court's electronic filing notification system.

                                             */s/ Kinsey D. Lakey*
                                             **KINSEY D. LAKEY**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **RUSS SAVAGE, Individually and for Others Similarly Situated,** | § § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CASE NO. 3:25-cv-914** |
| **SMOKY ROSE, LLC,** | § § | |
| *Defendant.* | § § § | |

## DECLARATION OF OSCAR AROCHE

I, Oscar Aroche, hereby declare as follows:

1.      My name is Oscar Aroche. I am over the age of 18 years, and I have never been convicted of a felony. I am of sound mind, and I am otherwise competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2.      I am the Director of Operations for Defendant Smoky Rose, LLC ("**Smoky Rose**"). I have held this position since 2023. Prior to this I was a server, an Assistant Manager, and the General Manager at Smoky Rose. I am an authorized representative of Smoky Rose in the above-captioned lawsuit. I have personal knowledge regarding Smoky Rose's business practices including, but not limited to,

its hiring and termination procedures, the tip-pool policy, the overtime policy, the Smoky Rose employment categories, Alfonso Ramos's employment status and job duties with Smoky Rose, and Plaintiff Russ Savage's ("**Plaintiff**") tenure with Smoky Rose.

3.      Smoky Rose hired Plaintiff as a bartender on November 14, 2018. During his employment with Smoky Rose, Plaintiff was subject to Smoky Rose's mandatory tip pool.

4.      ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████  It is their duty to review the Smoky Rose Server Handbook and comply with its terms. Each employee agrees to the terms in the Smoky Rose Server Handbook upon their hire—including the tip-pool parameters for tip-eligible employees. A true and correct copy of the Smoky Rose Server Handbook is attached as **Exhibit 1-A**.

5.      Additionally, Smoky Rose also requires all hourly, overtime eligible, employees to request and receive approval from Smoky Rose management before they work any overtime. Smoky Rose has discretion to deny such requests. However, Smoky Rose has, at all times, paid its eligible employees for all overtime worked.

6.      ████████████████████████████████████████

███████████ A true and correct copy of Plaintiff's Notice of Separation is attached as **Exhibit 1-B.**

7.     Leading up to Plaintiff's termination, former Smoky Rose assistant manager, Charlie Cash, reported multiple instances of Plaintiff's misbehavior on the job. For instance, Cash reported to me that Plaintiff had been caught drinking on the job, failed to ring up drinks for particular customers, and stole cash tips and did not report them per the tip-pool policy. A true and correct copy of Cash's August 2, 2022 email to me documenting these instances is attached as **Exhibit 1-C.**

8.     On another occasion, Cash reported to me that Plaintiff was unwilling to perform his job duties, consumed alcohol on the job, had several documented cases of managers and peers unwilling to work with him, attempted to purchase cocaine at the restaurant, and was accused of selling drugs at the restaurant. A true and correct copy of Cash's August 11, 2022 email documenting these instances is attached as **Exhibit 1-D.**

9.     Smoky Rose fully compensated Plaintiff for all sums he was owed under the tip-pool policy and for all overtime he worked.

10.     I also oversaw Alfonso Ramos during his employment with Smoky Rose. Mr. Ramos's title with Smoky Rose was "bar manager" and his primary job duties were those of a bartender. He was employed as an hourly employee and regularly performed the same tasks as any other Smoky Rose bartender. In fact, his

primary duties were front line bartending duties.

11.     Mr. Ramos did not manage the establishment, Smoky Rose, nor did he manage or supervise a department or subdivision of Smoky Rose. Rather, he worked as a bartender but had additional duties such as creating the bartender schedule and overseeing bar staff during Smoky Rose's operating hours. Mr. Ramos did not have unilateral authority on bar staffing decisions. He could only make recommendations on whether to hire or fire bartending staff to Smoky Rose management, including myself, and management would only consider his input. It was never dispositive. Further, Mr. Ramos attended bartender interviews and offered input to Smoky Rose management, but he never interviewed candidates on his own nor did he have authority to unilaterally hire any such candidates. Mr. Ramos did, on only a few occasions, participate in the termination of an employee, but this was only during a time when Mr. Ramos was in training to be a part of management (which he was not), and never during his times when he was working in the bar.

12.     Importantly, at one point Plaintiff worked as a bar manager and is well-aware of the lawful participation in the tip-pool for a bar manager's tip-generating work.

13.     Mr. Ramos only received tips for work he performed as a bartender. This includes, but is not limited to, taking orders, making drinks, and serving customers.

14.    Mr. Ramos never received tips for any work performed in a managerial capacity (i.e., supervising workers, creating a schedule, hiring/firing employees). He only received work for the above-described tip-generating work that he personally performed.

15.    I have received the Declaration of Charlie Cash in support of Plaintiff's Motion. Mr. Cash states that he paid Mr. Ramos tips for non-tip generating work. I am not aware of any such instance where this occurred. Nevertheless, if Mr. Cash paid Mr. Ramos for non-tip-generating work, then Mr. Cash was acting on his own and not as an agent of Smoky Rose. This behavior is against Smoky Rose's policies.

16.    Plaintiff never complained to Smoky Rose about any issues with the tip-pool or overtime policy. He never complained to Smoky Rose that he was not being fully paid for all overtime hours worked.

17.    Furthermore, bartenders, barbacks and runners have very different job responsibilities and pay structures than bartenders.

18.    Bartenders provide the following services: (1) mixing and serving drinks; (2) handling cash and POS transactions; (3) checking IDs to ensure legal drinking age compliance; (4) monitoring alcohol consumption and ensuring responsible serving of alcohol; and (5) providing customer service and upselling drinks.

19.    On the other hand, barbacks provide the following services: (1)

assisting bartenders by restocking supplies; (2) helping set up and break down the bar before and after shifts; and (3) maintaining kegs.

20.    Runners' duties include: (1) delivering food from the kitchen to tables; (2) ensuring correct orders and any special requests are delivered; (3) communicating with servers and kitchen staff about timing and availability; (4) and maintaining cleanliness of food stations.

21.    Each of these positions also have their own unique payment structure.

22.    Bartenders are paid $8.00-$10.00 an hour based on experience. Their tips (cash and credit card) are pooled by hours worked per day and paid out weekly via check and direct deposit. Bartenders are paid a 3.5% daily tip out from Smoky Rose's alcohol sales.

23.    Barbacks are paid $11.00-$12.00 an hour based on experience. They are paid 15% of the bartenders' total tips.

24.    Runners are paid $10.00-$18.00 an hour based on experience. They are paid a 2.5% daily tip out from the server's food sales.

25.    I have read Plaintiff's Motion for Court-Authorized Notice, and the statements contained therein are true and correct to the best of my knowledge.


My name is Oscar Aroche, and my date of birth is May 29, 1979. I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.


Executed on the 5th day of January 2026.

*Oscar Aroche*
Oscar Aroche (Jan 5, 2026 14:16:54 CST)
_____
Oscar Aroche

# 2026.01.05 Aroche Declaration (FINAL)

**Final Audit Report**                                          2026-01-05

| | |
|---|---|
| Created: | 2026-01-05 |
| By: | Heather Crabill (hcrabill@plattrichmond.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAm-Dh_03S_s8jpNghm0K9DAjFA5XoInWz |

## "2026.01.05 Aroche Declaration (FINAL)" History

📄 Document created by Heather Crabill (hcrabill@plattrichmond.com)
2026-01-05 - 7:52:22 PM GMT

📧 Document emailed to oaroche@smokyrose.com for signature
2026-01-05 - 7:52:44 PM GMT

📄 Email viewed by oaroche@smokyrose.com
2026-01-05 - 8:15:41 PM GMT

✍️ Signer oaroche@smokyrose.com entered name at signing as Oscar Aroche
2026-01-05 - 8:16:52 PM GMT

✍️ Document e-signed by Oscar Aroche (oaroche@smokyrose.com)
Signature Date: 2026-01-05 - 8:16:54 PM GMT - Time Source: server

✅ Agreement completed.
2026-01-05 - 8:16:54 PM GMT

Adobe Acrobat Sign

**App. 008**



CONFIDENTIAL

App. 009
SR 000001



CONFIDENTIAL

App. 010



CONFIDENTIAL



App. 012

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

App. 015



CONFIDENTIAL

App. 016

CONFIDENTIAL

Ex: 1-C

From: **Charlie Cash** ccash@smokyrose.com 
Subject: Russ On Monday Night, Aug 1s
Date: August 2, 2022 at 11:26 AM
To: Oscar Aroche  oaroche@smokyrose.com

CC

Oscar,

I am writing to document to you the behavior or Russ on Monday, August 1st.  There were several areas that I am concerned about and I think he runs a very loose bar and is doing things that are unethical.

First, Russ is drinking too much on the job.  He was doing shots with Shane, Nicole, and Nina who were all in enjoying happy hour. Just because those are former and current employees he is working and he should not be drinking on the job to the point were it effects his job.

Also, he wasn't ringing up all their drinks.  I think this is typical behavior and I believe this is why he has so many "regulars" on Monday nights. He also was putting his cash tips in his pocket so at the end of the night I had nothing to record.  This is not how we should operate.

Why is Russ so protective of his Mondays? Because he doesn't have to follow the rules and answer to any other bartenders.

Also he was so drunk it was effecting his ability to close. I finally just sent him home so there wouldn't be another episode between the two of us. I am not asking you to do anything about this one situation, but I do not approve of his behavior.

I am sending to only you, not David, so you understand my thoughts and position on the matter.

Charlie.



Charlie Cash
214-763-6076
ccash@smokyrose.com
8602 Garland Road Dallas, TX 75218
www.Smokyrose.com

CONFIDENTIAL                                                    SR 000064



**From:** **Charlie Cash** ccash@smokyrose.com
**Subject:** Russ
**Date:** August 11, 2022 at 9:45 AM
**To:** Oscar Aroche  oaroche@smokyrose.com

Not sure what you want to do about this, but I emailed you during your vacation regarding issues I had with him during the Monday I covered for you and Dustin.  Now we have another bartender, Madison, unwilling to work with him or after him.  You have a manager, Claire, unwilling to close with him if he closes. You have Russ unwilling or incapable of doing a job (close) that all other bartenders manage to do.  So here is what I see with Russ.

- Unwilling to perform stated job tasks
- Drinks on job
- Not a team player and coworker
    - Documented cases of managers and peers unwilling to work with him
- Argumentative with staff and management upon multiple occasions
- Accused of selling drugs at restaurant
- Accused of not charging for drinks to friends/regulars
- Attempting to purchase cocaine at restaurant (from Shane Snow)
- Wife using drugs on-site

This will flame out and I am not going down with Russ. Also you know my relationship with him about all of this is volatile and in an attempt to keep things as cool as possible I am staying out of it.  I will continue to voice my concerns with you (and you only), but once again I believe Russ is effecting our ability to run the bar in an optimal manner.

We can discuss when I get back if you want, but I am about at the end of my rope with him.  In my opinion Russ needs a change of scenery.  He is too comfortable, too set in his ways. He doesn't respect anyone other than David leaving it impossible for me or you or Dustin to manage him.  How is he any different than Shane? He's dragging us down.

Charlie.



Charlie Cash
214-763-6076
ccash@smokyrose.com
8602 Garland Road Dallas, TX 75218
www.Smokyrose.com

**CONFIDENTIAL**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

<span style="color:red">Ex. 2</span>

| | | |
|---|---|---|
| **RUSS SAVAGE, Individually and for Others Similarly Situated,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CASE NO. 3:25-cv-914** |
| **SMOKY ROSE, LLC,** | § § § | |
| *Defendant.* | § § | |

**SAVAGE'S FIRST AMENDED ANSWERS TO SMOKY**
**ROSE'S FIRST SET OF CONSOLIDATED DISCOVERY REQUESTS**

Plaintiff, Russ Savage, individually and for Others similarly situated, serves these responses to Smoky Rose's First Set of Consolidated Discovery Requests.

Date: December 15, 2025.

Respectfully submitted,

By: */s/ Carl A. Fitz*
   **Carl A. Fitz**
   Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**ATTORNEY FOR THE PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, a true and correct copy of this instrument was served upon all parties of record in accordance with the Federal Rules of Civil Procedure.

*s/ Carl A. Fitz*
**Carl A. Fitz**

---

**SAVAGE'S FIRST AMENDED RESPONSES TO FIRST DISCOVERY REQUESTS**

**App. 020**

**RESPONSE:** Plaintiff refers to the payroll records produced by Defendant in this case. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications with David Cash concerning the tips he received as part of his compensation during the FLSA limitations period. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 9:** All documents and communications between you and any Smoky Rose bar manager regarding all tips you received as part of your compensation from Smoky Rose during the FLSA Limitations Period.

**OBJECTIONS:** Plaintiff objects to this Request to the extent it seeks documents already in Defendant's possession or equally available to Defendant, including communications conducted through Smoky Rose's internal systems or records maintained in the ordinary course of its business**.**

**RESPONSE:** Plaintiff refers to the payroll and tip records produced by Defendant in this case. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications with any Smoky Rose bar manager concerning the tips he received as part of his compensation during the FLSA limitations period. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 10:** All documents evidencing your compensation from Smoky Rose during the FLSA Limitations Period, including but not limited to, pay checks, check stubs, W-2s, and/or bank statements.

**RESPONSE**: Plaintiff refers to the payroll and wage records produced by Defendant in this case. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents evidencing his compensation from Smoky Rose during the FLSA limitations period other than those already in Defendant's possession. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 11:** All non-privileged documents and communications between you and any third party regarding any tips you received as part of your compensation from Smoky Rose during the FLSA Limitations Period.

**OBJECTIONS:** Plaintiff objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) to the extent it seeks all "documents and communications" without reasonable limitation as to subject matter, time, or medium. Plaintiff also objects to this Request as seeking information not relevant to any claim or defense and unlikely to lead to the discovery of admissible evidence, particularly where it requests private or informal conversations unrelated to Smoky Rose's pay practices or tip policies.

**RESPONSE:** Plaintiff refers to the payroll and tip records produced by Defendant in this case. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications with third parties regarding the tips he received as part of his compensation from Smoky Rose during the FLSA limitations period. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 12:** All non-privileged documents and communications between you and any third party regarding any overtime you worked, requested to work, or were asked to work at Smoky Rose during the FLSA Limitations Period.

**OBJECTIONS:** Plaintiff objects to this Request as seeking information not relevant to any claim or defense and unlikely to lead to the discovery of admissible evidence, particularly where it seeks informal discussions or personal correspondence unrelated to the alleged overtime practices at issue.

**RESPONSE:** Plaintiff refers to the payroll records produced by Defendant in this case, which reflect information relevant to hours worked and compensation. Plaintiff also refers secondarily to his résumé, which provides general context regarding his role and duties at Smoky Rose. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications with any third party regarding overtime worked, requested, or assigned at Smoky Rose during the FLSA limitations period. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 13:** All documents and communications sufficient to identify any Putative Class Members as defined in the Complaint. *See* Complaint at ¶¶ 17-20.

**OBJECTIONS:** Plaintiff objects to this Request to the extent it seeks documents already in Defendant's possession or equally available to Defendant, including communications conducted through Smoky Rose's internal systems or records maintained in the ordinary course of its business**.**

**OBJECTIONS:** Plaintiff objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) to the extent it seeks all "documents and communication" without reasonable limitation as to subject matter, time, or medium. Plaintiff also objects to this Request to the extent it seeks information protected by the attorney–client privilege or work-product doctrine, including communications with counsel, counsel's agents, or documents prepared in anticipation of litigation. Plaintiff additionally objects to this Request as seeking information that may be private or confidential and not relevant to any claim or defense in this case.

**RESPONSE:** Plaintiff refers to the employment and payroll records produced by Defendant in this case, which contain information relevant to the Lawsuit and the facts related to tip-pooling and overtime pay. Plaintiff notes, however, that his résumé generally reflects his employment at Smoky Rose and his experience in bar operations, which provides general context regarding his role and duties. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications with third parties concerning the facts underlying this action or the claims related to tip-pooling and overtime. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

**REQUEST FOR PRODUCTION NO. 16:** All documents and communications related to your claim that Smoky Rose permitted managers to share in the tip pool as alleged in paragraphs 40 and 69 of the Complaint.

**OBJECTIONS:** Plaintiff objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) to the extent it seeks all "documents and communications" without limitation as to time, form, or subject matter. Plaintiff also objects to this Request to the extent it seeks documents already in Defendant's possession or equally available to Defendant, including internal employment records, payroll data, or communications involving Smoky Rose's management and tip distribution practices. Plaintiff further objects to this Request to the extent it seeks documents outside the FLSA limitations period of April 11, 2022, through the present.

**RESPONSE:** Plaintiff refers to the payroll records produced by Defendant in this case, which reflect information relevant to the facts underlying the alleged overtime and tip-pooling practices at issue. Plaintiff states that, after a reasonable search and inquiry, he is not presently in possession, custody, or control of any responsive, non-privileged documents or communications beyond those that may be produced in discovery or that are already within Defendant's possession. Plaintiff's investigation remains ongoing, and he will supplement this response in accordance with Fed. R. Civ. P. 26(e) should additional responsive materials be identified. Plaintiff is not withholding documents subject to these objections at this time.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories. A complete answer will include the name of each person and their contact information to the extent the individual is not included in Plaintiff's Initial Disclosures.

> **RESPONSE:** Plaintiff Russ Savage provided the information contained in these responses based on his personal knowledge, recollection, and review of available records. Plaintiff's counsel, Carl A. Fitz of Fitz Law PLLC, assisted in the review, preparation, and verification of these responses.
>
> **Russ Savage**
> c/o Fitz Law PLLC
> 3730 Kirby Drive, Suite 1200
> Houston, Texas 77098
> Tel: (713) 766-4000
>
> **Carl A. Fitz**
> Fitz Law PLLC
> 3730 Kirby Drive, Suite 1200
> Houston, Texas 77098
> Tel: (713) 766-4000
> Email: carl@fitz.legal

**INTERROGATORY NO. 2:**      Describe in detail each instance that you observed managers participating in the Smoky Rose tip pool and/or receiving tips from the tip pool. A complete answer will include for each instance: the date of the incident, an identification of the manager involved, an identification of the other employees present, and a description of the amount of tips received at Smoky Rose and the amount the manager(s) received.

> **OBJECTIONS:** Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1), to the extent it seeks identification of *each* instance of alleged participation by management in the tip pool, specific amounts of tips distributed, or exact dates of occurrence, as such information is not reasonably available to Plaintiff without access to Defendant's payroll and tip distribution records. Plaintiff further objects to this Interrogatory to the extent it seeks information equally available to Defendant, including its own records reflecting tip pool allocations, payment logs, and employee rosters
>
> **RESPONSE:** Plaintiff personally observed managers and/or individuals with supervisory authority, such as Alfonso Ramos, participating in or receiving distributions from the employee tip pool. Plaintiff recalls that such participation occurred on multiple occasions throughout his employment, including during late 2023, when management personnel were observed collecting a portion of pooled tips at the conclusion of shifts.

**INTERROGATORY NO. 3:**        Describe in detail each instance that you worked overtime at Smoky Rose and were not compensated. A complete answer will include for each instance: the date of the incident, an identification of the manager you worked with that day, an identification of other employees present that day, an identification of the number of hours you worked without pay, and a description of all conversations or communications between you and Smoky Rose concerning this alleged unpaid overtime.

**OBJECTIONS:** Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1), to the extent it requests identification of "each specific instance" of unpaid overtime work, including the exact dates, number of hours, and individuals present, as such information is not reasonably available to Plaintiff without access to Defendant's timekeeping and payroll records. Plaintiff further objects to this Interrogatory to the extent it seeks information already within Defendant's possession or equally available to Defendant, including employee schedules, time records, and pay data maintained in the ordinary course of business.

**RESPONSE:** Plaintiff refers to the payroll and timekeeping records maintained by Defendant, which are expected to reflect the hours worked by Plaintiff during his employment. Plaintiff also references his résumé, which reflects his lead bartender position and the high-volume, extended-shift nature of his role at Smoky Rose. This reference is offered solely to provide context regarding his work pattern and responsibilities, not as evidence of specific hours worked. Plaintiff states that during his employment at Smoky Rose, he routinely worked in excess of forty (40) hours per week without receiving overtime compensation as required under the Fair Labor Standards Act ("FLSA"). This occurred on numerous occasions throughout his employment, including but not limited to weeks in which Plaintiff worked double shifts, extended closing duties, or covered for other employees. Plaintiff's work hours and corresponding compensation are believed to be reflected in Defendant's internal scheduling and payroll systems. Plaintiff does not presently recall the specific dates, hours, or names of all individuals present during each instance but will supplement this response in accordance with Fed. R. Civ. P. 26(e) upon receipt of Defendant's records or additional information obtained through discovery.

**FIRST AMENDED RESPONSE:** Plaintiff refers to his declaration submitted in support of his motion for Court-Authorized Notice, which generally describes when Savage was required to work overtime and not compensated. Under Smoky Rose's policy, Savage would typically work on average two additional hours after he was scheduled to clock-out. On early nights, Savage would conclude working around midnight, despite being required to clock-out earlier. On late nights, Savage would conclude working around 3 or 4 AM, despite being required to clock-out earlier. The managers on duty were typically Alfonso Ramos and/or Oscar Aroche.

**INTERROGATORY NO. 4:**        Describe in detail the processes and procedures you followed in reporting tips to Smoky Rose and receiving a payout from the tip pool. A complete answer will include, but is not limited to, an identification of the individual(s) that tips were reported to, an explanation as to how tips were accounted for, and an explanation as to how tips were distributed.

---

SAVAGE'S FIRST AMENDED RESPONSES TO FIRST DISCOVERY REQUESTS

**App. 025**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **RUSS SAVAGE, Individually and** | § | |
| **for Others Similarly Situated,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CASE NO. 3:25-cv-914** |
| | § | |
| **SMOKY ROSE, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT SMOKY ROSE, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF RUSS SAVAGE'S FIRST SET OF DISCOVERY

**TO:**   Plaintiff, Russ Savage, by and through his counsel, Carl A. Fitz, Fitz Law, PLLC, 3730 Kirby Drive, Ste. 1200, Houston, Texas 77098, and Travis Gasper, Gasper Law PLLC, 633 West David Street, Dallas, Texas 75208.

Pursuant to FEDERAL RULES OF CIVIL PROCEDURE 33, 34, and 36, Defendant Smoky Rose, LLC ("**Smoky Rose**"), serves its objections, responses, and answers to Plaintiff Russ Savage's ("**Savage**") First Set of Discovery. Smoky Rose stands ready and willing to confer with Savage's counsel on any and all of its asserted objections. Additionally, as discovery is in its early stages, Smoky Rose reserves the right to supplement its answers and responses as information becomes known and available.

### [SIGNATURES ON FOLLOWING PAGE]

Dated: August 22, 2025                    Respectfully submitted,

                                          **PLATT RICHMOND PLLC**

                                          */s/ Kinsey D. Lakey*
                                          **KINSEY D. LAKEY**
                                          Texas Bar No. 24122134
                                          klakey@plattrichmond.com
                                          **WILLIAM S. RICHMOND**
                                          Texas Bar No. 24006680040
                                          brichmond@plattrichmond.com
                                          **HEATHER M. CRABILL**
                                          Texas Bar No. 24131151
                                          hcrabill@plattrichmond.com

                                          1201 N. Riverfront Blvd., Suite 100
                                          Dallas, Texas 75207
                                          214.559.2700 Main
                                          214.559.4390 Fax

                                          **COUNSEL FOR DEFENDANT**


                    <u>**CERTIFICATE OF SERVICE**</u>

        The undersigned counsel for Defendant hereby certifies that a copy of the foregoing document was served on all counsel of record on August 22, 2025, via electronic filing through the Court's ECF filing system.


                                          */s/ Kinsey D. Lakey*
                                          **KINSEY D. LAKEY**

| Lisa Getto | Server | $2.13/hour | Bar 3.5%, Busser 2%, Runner 2.5%=8% |
| Luis Delgado | Barback | $12.50/hour | |
| Nordandino Lopez | Busser | $12.00/hour | |
| Osbaldo Trejo | Bartender | $10.00/hour | Barback 1.5%, Runner 2.5%= 4% |
| Patrick Lynch | Server | $2.13 | Bar 3.5%, Busser 2%, Runner 2.5%=8% |
| Preston Hammos | Server | $2.13 | Bar 3.5%, Busser 2%, Runner 2.5%=8 |
| Ricardo Ordaz | Food Runner | $16.00/hour | |
| Rosa Rivas | Server | $2.13/hour | Bar 3.5%, Busser 2%, Runner 2.5%=8% |
| Russel Savage | Bartender | $10.00/hour | Barback 1.5%, Runner 2.5%= 4% |
| Ulises Lazcano | Barback | $12.00/hour | |
| Yakon Slepov | Server | $2.13/hour | Bar 3.5%, Busser 2%, Runner 2.5%=8% |

**INTERROGATORY NO. 5:**  IDENTIFY all job duties, including side work duties, closing duties, opening duties, running side work duties, and checklists performed by each PERSON who received tips from the tip pool.

**OBJECTIONS:**  Smoky Rose objects to this interrogatory as vague and ambiguous because the terms "side work duties" and "running side work duties" are undefined and subject to multiple meanings..

**ANSWER:**

The following duties apply to the bar managers, bartenders, and/or barbacks:

- Everyday Bar Opening Duties:
    - Fill up and turn on your frozen machines first so that they will be frozen by the time you open & clean up any spillage
    - Ensure the dishwasher has soap
    - Lay out bar mats
    - Set up your well(s) (batches, fruit trays, salt rimmer, bar tools)
    - Ensure that all fruit in the garnish trays are fresh
    - If you would not eat it – do not serve it!
    - Remove all pour spout covers and draft plugs
    - Ensure that your fridge has adequate batches for the day
    - Ensure that you have enough fruit cut for the day
    - Give your bar a final readiness check and wipe down everything to make sure it is ready for guests to arrive

- o Make sure each cocktail batch in the walk in has ¼ full of a cambro <u>after backups are stocked</u>, anything that has less will need to be made
  - o Make a list of batches to be made and begin thawing the fruit you need. Make sure that fresh batches go in clean cambros
  - o Put away liquor order if delivered
  - o Make sure wine & glassware is completely stocked in both bars
- Final Readiness Check / Open Walkthrough
  - o All bar tools are in place
  - o Service well is set up
  - o Equipment is assembled and running
  - o Chemical levels are checked in the dishwasher
  - o Bar is well organized for needs of the day
  - o All orders and product are stocked and put away
  - o The cash drawer is assembled and balanced ($400)
- Shift Change Duties:
  - o Make sure that the night shift is fully stocked with fruit, batches, beer, and wine
  - o Ensure all opening duties are completed prior to leaving
  - o Notify all customers at the bar top of shift change and introduce them to the nighttime bartender
  - o Ensure that you are leaving your team with a clean and well-stocked bar
  - o Take out the trash in the inside bar
  - o Ensure the inside bar is perfectly neat and tidy & all deliveries have been put away
  - o Ensure the walk in is organized prior to leaving
- Everyday Bar Closing Duties:
  - o Empty and deep clean frozen machines & rocks machine with room temperature water
  - o Bring all sealed batches to the walk-in
  - o Marry all garnish tray fruits
  - o Run all mats through the dishwasher
  - o Run all bar tools through the dishwasher
  - o Clean each draft tap and plug them
  - o Run a pitcher of hot water & bleach through all the drains
  - o Clean all the grates (speed rails, beer/wine drain)
  - o Wipe down all the bottles and cap the spouts
  - o Restock the glassware and check the dish area for glass racks
  - o Make sure all stemware is polished, each bar is fully stocked, and the rest is put away
  - o Wipe down computer screen and organize pos station area
  - o Restock beer fridges as needed

The following duties apply to servers and/or bussers:

- Opening duties
  - o Clock in and write your name on the board in order
  - o Brew tea, coffee, & lemonade
  - o Wipe down & straighten up all tables, reset the floor

- o Wipe down all benches on the patio & inside
- o Blow leaves
- o Water plants
- o Assemble couch cushions
- o Set up well bar station
- o Restock to-go cups, boxes, & appetizer plates
- o Cut lemons
- o Refill sugar catties
- o Replace batteries in the fly fans
- o Scrub entry and walkway floors
- o Roll any left-over silverware
- o Line any empty trays
- o Set up appetizer station if no runner
- o Wipe down menus in no hostess
- o Assign table seating for the shift if no host
- o Vacuum windows for flies
- o Wipe down highchairs everyday
- Closing duties
  - o Empty and clean tea urns & coffee containers
  - o Restock plastic cups & ice
  - o Wrap lemons & put in fridge
  - o Restock to-go cups, boxes, & appetizer plates
  - o Clean all counter tops in server station & fridge doors
  - o Drain ice cream scoop & clean station
  - o Put away couch cushions
  - o Make sure all tables are swept & wiped down
  - o Remove all menus & handhelds from the server station
  - o Wipe down all menus & handhelds
  - o Roll all silverware
  - o Line all trays
  - o Clean & refill well bar station
  - o Return all fly fans to inside host station or patio bar corner
  - o Put away/organize highchairs
  - o Run pitchers, ice cream scoop, & any remaining glassware through dishwasher
  - o Sweep underneath drink station
  - o Soak soda station caps in soda water overnight
  - o Empty all trash cans from the main entrance to the server station
  - o Wipe down microwave
  - o Wipe & sanitize all shelves and surfaces in the server station
  - o Bleach the sink
  - o Once complete – clock out and run your check out.

Pursuant to Federal Rule of Civil Procedure, Smoky Rose incorporates SR 000021-000025 as responsive to this interrogatory.